|  |  |  |
|---|---|---|
| CHERIE LINDBERG and GRADY MOODY, on behalf of themselves and all others similarly situated, | ) ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | No. 2:10-cv-02014-JPM-dkv |
| UHS OF LAKESIDE, LLC, d/b/a LAKESIDE BEHAVIORAL HEALTH SYSTEM, COMMUNITY BEHAVIORAL HEALTH, LLC, and UNIVERSAL HEALTH SERVICES, INC., | ) ) ) ) ) |  |
| Defendants. | ) ) |  |

**ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL CLASS
CERTIFICATION AND COURT-AUTHORIZED NOTICE PURSUANT TO THE FLSA, 29
U.S.C. § 216(B)**

Before the Court is named Plaintiffs Cherie Lindberg and Grady Moody's (collectively "Plaintiffs") Notice of Motion and Motion for Conditional Class Certification and Court-Authorized Notice Pursuant to the FLSA, 29 U.S.C. § 216(b) (Docket Entry ("D.E.") 31), filed June 28, 2010. ("Pls.' Mot.") Defendants UHS of Lakeside, LLC, d/b/a Lakeside Behavioral Health System ("Lakeside"), Community Behavioral Health, LLC ("CBH"), and Universal Health Services ("UHS") (collectively "Defendants") responded in opposition on September 2, 2010. (D.E. 50 ("Defs.' Resp.").) Plaintiffs filed a reply on September 13, 2010. (D.E. 59 ("Pls.' Reply").) With leave of the Court, Defendants filed a sur-reply on September 23, 2010. (D.E. 63 ("Defs.' Sur-Reply").) For the reasons set forth below, Plaintiffs' Motion is GRANTED.

## I. BACKGROUND

On January 7, 2010, Cherie Lindberg ("Lindberg") filed a complaint on behalf of herself and those similarly situated against Defendant Lakeside. (D.E. 1.) Lindberg later amended her complaint on August 20, 2010, adding Grady Moody as an additional named Plaintiff and adding UHS and CBH as Defendants. (First Am. FLSA Collective Action Compl. ("Am. Compl.") (D.E. 49).) In their Amended Complaint, Plaintiffs allege that Defendants violated the Fair Labor Standards Act ("FLSA") by not compensating Plaintiffs and other members of the purported class for overtime as required by the FLSA. (Id. ¶ 41.)

Lakeside and CBH operate behavioral health facilities in Memphis, Tennessee. (See Decl. of James Miller ("Miller Decl.") (D.E. 51) ¶¶ 2-3; Decl. of Patricia Turner ("Turner Decl.") (D.E. 52) ¶ 1.) Cherie Lindberg was employed full-time by Lakeside as a registered nurse and charge nurse from April 2007 through January 2010. (Am. Compl. ¶ 3.) Grady Moody was employed full-time by CBH as a community counselor from 1999 through April 2008.[1] (Id. ¶ 4.)

Plaintiffs' allege that Defendants violated the FLSA by subjecting all hourly employees to a common policy that deducted a 30-minute meal period for each shift, regardless of whether or not employees had the opportunity to take a break, and made no effort to ensure that the employees were relieved of duty during that time. (Am. Compl. ¶ 15; Pls.' Mem. of Law in Supp. of Mot. ("Pls.' Mem.") (D.E. 31-1) 13.)) According to Plaintiffs, Defendants expect hourly employees to be available at all times during their

---

[1] In 2005 and 2006, Grady Moody was employed part-time by Lakeside as a community counselor. (Declaration of Grady Moody ("Moody Decl.") (D.E. 31-8) ¶ 2.) Since April 2008, Moody has been employed part-time by CBH as a PRN. (Id.)

shifts to respond to demands from patients and requests from co-workers and supervisors. (Am. Compl. ¶¶ 22-24.) As a result, employees are consistently required to continue working during unpaid meal breaks "without . . . relief by additional staff." (Id. ¶ 19, 23.)

Plaintiffs further allege that Defendants were on notice that employees worked unpaid through meal breaks because management both requested it and observed it. (Id. ¶¶ 25-26.) In addition, Plaintiffs aver that, "[g]iven the demands of the health care industry and staffing shortages," Defendants knew that their employees would have to work through their unpaid breaks in order to complete their assigned tasks. (Id. ¶ 28.)

Plaintiffs argue that Defendants' meal break deduction policy improperly shifts the burden to employees to reverse the automatic deduction, and that this policy, common to all hourly employees, is subject to challenge on a collective basis. (Id. ¶¶ 29, 41.)

Plaintiffs seek conditional certification of a collective action, and propose that notice be sent to "all non-exempt employees who worked for Defendants UHS of Lakeside and Community Behavioral Health facilities during the past three years." (Pls.' Mot. 1.)

Defendants concede that, at all relevant times, Lakeside and CBH had similar meal break deduction policies in place for all non-exempt employees.[2] (Miller Decl. ¶ 13; Turner Decl. ¶¶ 11-12.)

---

[2] The written policy states:

> Non-exempt employees, or employees paid on an hourly basis, are expected to take one half-hour for a meal break each work shift. . . . Please always take a full half-hour for your meal period unless advised by your supervisor to do otherwise. If you are non-exempt and required to work through your meal break, you will be paid for the worked time. You must ensure that your supervisor has approved

The policy automatically deducted a 30-minute meal break from the employees' recorded time for any shift where hourly-paid employees worked a shift of six hours or more. (Miller Decl. ¶ 13.) Pursuant to the written policy, employees were instructed and expected to take a 30-minute meal break during each shift longer than six hours. (Id.) If they failed to do so, Defendants aver that employees were instructed and expected to record their missed meals break on a Time Adjustment Form, have their supervisor sign the form, and submit it to payroll for processing. (Id.)

Effective March 28, 2010, Lakeside changed its meal break policy. (Id. ¶ 14.) Under the new policy, employees are required to clock in and out when they take their meal breaks. (Id.) Effective April 11, 2010, CBH eliminated its auto-deduction policy. (Turner Decl. ¶ 13.)

## II. PLAINTIFFS' EVIDENCE REGARDING THE PURPORTED CLASS

In support of their motion for conditional class certification, Plaintiffs filed the interrogatory responses of eight putative plaintiffs and one named Plaintiff.[3] (Pls.' Mot. Ex. 7 (collectively "Interrogs.").) Plaintiffs supplemented the responses with the declarations of four putative plaintiffs and

---

your working through the meal period prior to working extra time. In addition, it is your responsibility to report this worked time on your record for that pay period.

(Miller Decl. 9, Tab 2.)

[3] In addition to named Plaintiff Lindberg, (Interrogs. 91-113 ("Lindberg Interrogs."), the following putative plaintiffs provided interrogatory responses: Ebony Barnes (id. at 2-23 ("Barnes Interrogs.")); Lacell Cotton (id. at 24-45 ("Cotton Interrogs.")); Susan Curran (id. at 46-68 ("Curran Interrogs.")); Tracy Curry (id. at 69-90 ("Curry Interrogs.")); Ian McCloud (id. at 114-35 ("McCloud Interrogs."); Madhuri Srinivasan (id. at 135-56 ("Srinivasan Interrogs.")); Angela Thibodeau (id. at 157-80 ("Thibodeau Interrogs.")); and Bruce Wilks (id. at 181-202 ("Wilks Interrogs.")).

one named Plaintiff.[4] (Pls.' Mot. Ex. 8 (collectively "Decls.").)
All the declarants[5] aver that:

(1) they were employed full-time by CBH and/or Lakeside at some point during the three years preceding the filing of the Complaint[6] (Interrogs. ¶ 2);

(2) their respective job duties involved patient care or supervision in some capacity[7] (id. ¶¶ 3, 8);

(3) they usually worked 40 hours a week or more (Barnes Decl.; Cotton Decl.; Curran Interrogs. ¶ 3; Curry Decl.; Am. Compl. ¶ 32; McCloud Interrogs. ¶ 3; Srinivasan Decl.; Thibodeau Interrogs. ¶ 3; Wilks Interrogs. ¶ 3; Moody Decl.);

(4) during their employment, they were required to work through some or a substantial number of meal breaks for which 30 minutes was nevertheless deducted from their hours (Interrogs. ¶ 9);

(5) they continued to perform their required work duties instead of taking meal breaks (id. ¶¶ 9, 11);

(6) the demands of their respective job duties and/or patient supervision responsibilities precluded them from taking breaks (id. ¶¶ 3, 9, 17);

(7) their respective managers knew that they performed compensable work during their purported meal breaks (id. ¶¶ 7, 14, 17);

---

[4] In addition to named Plaintiff Moody, (Decls. 10-11), the following putative plaintiffs provided declarations: Ebony Barnes (id. at 2 ("Barnes Decl.")); Lacell Cotton (id. at 3-4 ("Cotton Decl.")); Tracy Curry (id. at 9 ("Curry Decl.")); and Madhuri Srinivasan (id. at 16 ("Srinivasan Decl.").

[5] For ease of reference, the Court will refer to the putative plaintiffs and the named Plaintiffs that submitted interrogatory answers and/or declarations collectively as "declarants."

[6] Two declarants worked for Lakeside as a registered nurse, staff nurse, and/or charge nurse. (Am. Compl. ¶ 3; Lindberg Interrogs. ¶ 3; Srinivasan Decl. 16; Srinivasan Interrogs. ¶ 3.) One declarant worked as a charge nurse for both Lakeside and CBH. (Curran Interrogs. ¶ 3.) Four declarants worked for Lakeside as a community counselor, lead community counselor, and/or head counselor. (Barnes Interrogs. ¶ 3; Thibodeau Interrogs. ¶ 3; Curry Interrogs. ¶ 3; Cotton Decl. ¶ 3; Cotton Interrogs. ¶ 3; McCloud Interrogs. ¶ 3.) One of these declarants also worked for Lakeside as a teacher's assistant. (Cotton Decl. 3; Cotton Interrogs. ¶ 3.) One declarant worked for CBH as a community counselor. (Moody Decl. ¶ 2.) One declarant worked for Lakeside as a mental health technician. (Wilks Interrogs. ¶ 3.)

[7] Lacell Cotton's description of his duties as a teacher's assistant is the one exception. Cotton explains that, as a teacher's assistant, he administered testing and conducted group activities. (Cotton Interrogs. ¶ 3.)

(8) they worked with other employees who did not receive meal breaks (id. ¶ 6);

(9) they were required to clock in and out at the beginning and end of each day (id. ¶ 10);

(10) 30 minutes were automatically deducted from their hours each day regardless of whether they worked during their meal break (id. ¶ 10);

(11) Defendants neither tracked whether they took breaks nor took steps to ensure that they took their break (id. ¶ 10);

(12) there were time adjustment sheets they could have filled out if they missed a break but Defendants routinely discouraged or ignored this practice (id. ¶ 10).

The reasons given by the declarants for working through some or all of their meal periods vary. For example, six declarants averred that they were told they could not leave their posts unattended and/or leave their patients unsupervised. (Barnes Interrogs. ¶ 17; Cotton Interrogs. ¶¶ 9, 17; Curran Interrogs. ¶ 17; Curry Interrogs. ¶ 3; Lindberg ¶ 17; Wilks Interrogs. ¶ 3.) Seven declarants stated that there was insufficient staff available to relieve them for breaks. (Barnes Interrogs. ¶ 3; Cotton Interrogs. ¶¶ 9, 17; Curran Interrogs. ¶ 17; Curry Interrogs. ¶ 3; Lindberg Interrogs. ¶ 17; Thibodeau Interrogs. ¶ 7; Wilks Interrogs. ¶ 17.) Three declarants averred that they were not able to take breaks because of the demands of their respective job duties. (Barnes Interrogs. ¶¶ 8, 17; McCloud Interrogs. ¶ 3; Moody Decl. ¶ 5.)

While all of the declarants indicate that Defendants were aware that employees were working unpaid through meal breaks, six declarants specifically asserted that they discussed their concerns about missed, unpaid meal breaks with supervisors or

managers. (Curran Interrogs. ¶ 14; Curry Interrogs. ¶¶ 14, 17;
McCloud Interrogs. ¶ 17; Srinivasan Interrogs. ¶ 7; Thibodeau
Interrogs. ¶ 7; Wilks Interrogs. ¶ 14.) The interrogatory answers
vary in terms of management's alleged response to these inquiries.
(See id.)  For example, Susan Curran averred that: "While working,
[I] would call and leave messages with house supervisors to
complain about breaks. [I] was repeatedly told someone was coming
to relieve [me], but no one ever came." (Curran Interrogs. ¶ 14;
accord Wilks Interrogs. ¶ 14.) Curran also averred that her
supervisor "repeatedly just said that employees had to find time
for breaks." (Curran Interrogs. ¶ 14.) Ian McCloud stated that he
was told that "it was his responsibility to make sure that he took
a break." (McCloud Interrogs. ¶ 17.) Tracy Curry averred that,
when he complained about not getting breaks, his supervisor told
him "to stop complaining, . . . missing breaks [is] part of the
job[,] . . . not to worry about it[,] and to 'just man up.'"
(Curry Interrogs. ¶ 7.) Madhuri Srinivasan stated that she was
told that Defendants' policy regarding meal breaks was "you take
it or you lose it." (Srinivasan Interrogs. ¶ 7.)

Though the declarants each acknowledge that there was a time
adjustment form that employees could fill out if they missed a
meal break, each avers that they did not do so because Defendants
routinely either ignored or discouraged the practice.  (Interrogs.
¶ 10.)  Four declarants asserted that the forms were never
approved. (Barnes Interrogs. ¶ 10; Curry Interrogs. ¶ 10;
Thibodeau Interrogs. ¶ 10; McCloud Interrogs. ¶ 10.) Bruce Wilks
averred that it was extremely difficult to get the forms approved
by a supervisor.  (Wilks Interrogs. ¶ 10.) Susan Curran stated

that when she did fill out a form, her supervisor rejected it. (Curran Interrogs. ¶ 10.) Two declarants asserted that they were told they would be written up if they submitted a time adjustment form for a missed break. (Curran Interrogs. ¶ 10; Thibodeau Interrogs. ¶¶ 7, 10.) Lacell Cotton stated that he "was discouraged from completing these forms by Defendants" and that on one occasion, he was reprimanded for doing so. (Cotton Interrogs. ¶¶ 7, 10.) Cherie Lindbergh averred that, when she informed her supervisor that she had filled out a form, she was told that "it wasn't a very good idea and that they frown upon employees filling them out." (Lindberg Interrogs. ¶ 7.)

### III. STANDARD FOR CONDITIONAL CLASS CERTIFICATION AND COURT-FACILITATED NOTICE

Section 216(b) of the FLSA provides that employees may recover unpaid overtime compensation by collectively suing an employer under certain circumstances. 29 U.S.C. § 216(b). Specifically, § 216(b) states:

> Any employer who violates [the maximum hours provisions] of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be.... An action to recover [for such liability] may be maintained ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

Id. To proceed collectively, named plaintiffs must therefore demonstrate that they are "similarly situated" to the opt-in plaintiffs—the employees they seek to notify and represent.

To determine whether plaintiffs are similarly situated, courts generally employ a two-phase inquiry. O'Brien v. Ed Donnelly Enters., 575 F.3d 567, 583 (6th Cir. 2009). The first stage occurs early in the discovery process, when the Court

8

determines whether to "conditionally" certify the proposed class. Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546-47 (6th Cir. 2006). The purpose of the first stage, or conditional certification, is to provide notice to potential plaintiffs and to present them with an opportunity to opt in. See Jones-Turner v. Yellow Enter. Sys., LLC, No. 3:07-CV-218-S, 2007 WL 3145980, at *1 (W.D. Ky. Oct. 25, 2007). The second stage occurs after "all of the opt-in forms have been received and discovery has concluded." Comer, 454 F.3d at 546. Using a more rigorous standard, a second determination is made as to whether the named plaintiffs and opt-in plaintiffs are similarly situated. Id. at 547.

This case is at the first stage.[8] The named Plaintiffs' burden at this conditional certification stage is "fairly lenient" and requires only "a modest factual showing" that they are similarly situated to the other employees they seek to notify. Id. at 547 (citations omitted). The FLSA does not define the term "similarly situated." Recently, the Sixth Circuit commented on

---

[8] Defendants' response memorandum concedes that the lower, "notice stage" standard of scrutiny applies in this case. (Defs.' Resp. 7.) However, Defendants cite and quote from a number of cases applying an intermediate standard. (See Defs.' Resp. 6 (Bowman v. Crossmark, Inc., No. 3:09-CV-16, 2010 WL 2837519 (E.D. Tenn. July 19, 2010)); id. at 8 (Pacheco v. Boar's Head Provisions Co., Inc., 671 F. Supp. 2d 957 (W.D. Mich. 2009); Olivo v. GMAC Mortg. Corp., 374 F. Supp. 2d 545 (E.D. Mich. 2004); id. at 9 (Ledbetter v. Pruitt Corp., No. 5:05-CV-329 (CAR), 2007 WL 496451 (M.D. Ga. Feb. 12, 2007)); id. at 10-11 (Jimenez v. Lakeside Pic-N-Pac, L.L.C., No. 1:06-CV-456, 2007 WL 4454295 (W.D. Mich. Dec. 14, 2007).) In cases where limited but substantial discovery has been completed, some courts have applied a standard that goes beyond the lenient standard employed at the early notice stage. This "intermediate" approach incorporates an analysis of the relevant factors found in post-discovery (second stage) cases to the extent the record has been developed. See Bowman, 2010 WL 2837519, at *5. To the extent that Defendants' argument rests on the application of a more rigorous standard, it is without merit. The results of any discovery completed while this motion has been pending are not before the Court. The appropriate standard to apply for purposes of determining Plaintiffs' motion is the more lenient, first-stage standard. See Bouaphakeo v. Tyson Foods, Inc., No. C 07-4009-MWB, 2008 WL 2645759, at *14 (N.D. Iowa July 3, 2008) (finding that "beginning with tier one of the analysis is the most equitable means of proceedings" where "not all information is before the court").

the issue: "[I]t is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." O'Brien, 575 F.3d at 584. The O'Brien court explained, however, that "[s]howing a 'unified policy' of violations is not required" to support certification of a collective action. Id. at 584. Rather, Plaintiffs may also meet the similarly situated requirement if they demonstrate, at a minimum, that "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." Id.

Because the determination at this stage is made using a fairly lenient standard, the Sixth Circuit has recognized that it "typically results in conditional certification of a representative class." Comer, 454 F.3d at 547 (citations omitted). If the court determines that conditional certification is appropriate, "putative class members are given notice and the opportunity to 'opt-in.'" Pacheco, 671 F. Supp. 2d at 959 (citations omitted).

**IV. ANALYSIS**

### A. Similarly Situated Analysis

As noted above, to determine whether to conditionally certify the proposed class, the Court must examine Plaintiffs' pleadings, declarations, and interrogatory answers to determine whether Plaintiffs and the other members of the proposed class are sufficiently "similarly situated" to warrant the issuance of notice to all members of the pendency of the suit, and to permit

10

it to proceed as a collective action through discovery.[9] O'
Brien, 575 F.3d at 584.

Plaintiffs assert that they are similarly situated to "[a]ll
persons employed within the three years preceding the filing of
this action at [Lakeside] or [CBH] whose pay was subject to an
automatic 30 minute meal period deduction even when they performed
compensable working during the unpaid 'meal break.'" (Am. Compl. ¶
35.) Under the lenient standard applicable at this first stage,
Plaintiffs' evidence is sufficient to demonstrate that Plaintiffs
are similarly situated to the putative plaintiffs.

Defendants argue that class certification is inappropriate
because Plaintiffs cannot demonstrate that they and potential
plaintiffs together were victims of a common policy or plan that
violates the FLSA. (Defs.' Resp. 7, 9.) Defendants contend that
their auto-deduction policy does not, on its face, violate the
FLSA because it provides a mechanism for employees to reverse the
automatic deduction. (Id. at 10.) Defendants assert that
conditional certification should be denied because Plaintiffs have
failed to present evidence that there was a corporate policy of
refusing to compensate employees for missed meal periods or a
company-wide decision to ignore its written policy regarding
reversing the automatic deduction. (Id. at 10-11 (quoting Saleen

---

[9] Another consideration for determining the propriety of certification is
whether a plaintiff seeking certification of a collective action under § 216(b)
has demonstrated that "there are other employees . . . who desire to 'opt-in.'"
See Frye v. Baptist Mem'l Hosp., No. 07-2708, 2008 WL 6653632, at 6 (W.D. Tenn.
Sept. 16, 2008) (citations omitted).  The interest prong of the relevant inquiry
is easily satisfied here. In addition to the named Plaintiffs, twenty-four
employees of either Lakeside or CBH have indicated their consent to join the
action. (See D.E. 9; D.E. 11; D.E. 13; D.E. 15; D.E. 16, D.E. 17; D.E. 18; D.E.
19, D.E. 20; D.E. 21; D.E. 27; D.E. 33; D.E. 34; D.E. 37; D.E. 40; D.E. 45; D.E.
47; D.E. 62; D.E. 66.)

v. Waste Mgmt., Inc., No. 08-4959 (PJS/JJK), 2009 WL 1664451, at
*4 (D. Minn. June 15, 2009)).) In addition, Defendants rely on
Pacheco v. Boar's Head Provisions Co., 671 F. Supp. 2d 957 (W.D.
Mich. 2009), in support of their argument that a unified policy of
violations is required to support certification. In Pacheco, the
district court rejected the clear statement by the Sixth Circuit
in O'Brien that "[s]howing a 'unified policy' of violations is not
required," reasoning that this statement was merely dicta. Id. at
961. Despite Defendant's arguments to the contrary, the Court
disagrees with Pacheco and sees no reason to disregard O'Brien.

Notwithstanding the arguably lesser standard enunciated in
O'Brien, the Court finds that Plaintiffs have demonstrated an
"employer policy" susceptible to challenge at this stage in the
proceedings. See Camesi v. Univ. of Pittsburgh Med. Ctr., No. 09-
85J, 2009 WL 1361265, at *4 (W.D. Pa. May 14, 2009). In a case
with a similar auto-deduction policy, the district court in
Kimbell v. Dynamic Strategy concluded that the plaintiffs'
evidence was sufficient to demonstrate they were similarly
situated to the putative plaintiffs and granted conditional
certification. No. 3:09-1175, 2009 WL 1651431, at *5 (M.D. Tenn.
June 12, 2009). Kimbell involved an auto-deduction policy in which
the plaintiffs' proof showed "that although the [d]efendant had a
written policy in place to ensure that time records were edited to
reflect missed meal periods, this policy was ignored on numerous
occasions." Id. In its analysis, the Kimbell court relied on
Department of Labor regulations, which place the burden of
controlling "work time"——including that which management "suffered

or permitted"——on management.[10] Id. at *4-*5 (citing 29 U.S.C. § 203(g); 29 C.F.R. §§ 785.11, 785.13, 785.19). Because the plaintiffs' evidence showed that the defendant had a "regular practice of failing to account for missed meal periods," the court concluded that the plaintiffs had demonstrated a common practice subject to challenge on a collective basis. Id.

Likewise, in Camesi, the court granted notice to a class of hourly employees on the basis of the defendant's automatic meal break deduction policy. 2009 WL 1361265, at *4. The defendant had also implemented a policy whereby an employee could affirmatively "cancel" a meal break deduction if he/she worked during a meal break. Id. at *4. The court found that "[t]he law is clear that it is the employer's responsibility, not its employees', to ensure compensation for work 'suffered or permitted'" by the employer. Id. (citing cases which reference D.O.L. regulations). The court held that "[d]efendants' arguable attempt to shift statutory responsibilities to their workers [itself] constitutes an 'employer policy' susceptible to challenge at this stage in the proceedings." Id. Accordingly, based on plaintiffs' affirmations demonstrating unpaid work time and the defendants' automatic deduction policy, the court found that the plaintiffs had easily

_____

[10] Section 203(g) of the FLSA defines "employ" to include "to suffer or permit to work." 29 U.S.C. § 203(g). The Department of Labor regulations explain this provision: "Work not requested but suffered or permitted is work time. . . . The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time." 29 C.F.R. § 785.11. Another regulation places the burden of controlling "work time" on management:

> ... [I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785.13.

met their burden, and granted notice to all of defendants' non-exempt, hourly employees.[11] Id. at *5.

As these and similar cases instruct, "it is the failure of an employer to compensate employees who work through . . . unpaid meal breaks, and to police and oversee hourly workers and their supervisors to ensure that when working through or during unpaid meal breaks they are compensated, that potentially runs afoul of the [FLSA]." Colozzi, 595 F. Supp. 2d at 206-07; see also Wage and Hour Division, U.S. Dep't of Labor, Factsheet No. 53, The Health Care Industry and Hours Worked (2008) ("When choosing to automatically deduct 30-minutes per shift, the employer must ensure that the employees are receiving the full meal break.").

The Court finds these cases persuasive and accordingly, holds that class certification is appropriate where, as here, Plaintiffs have made a modest factual showing that Defendants utilized an auto-deduction policy that placed the burden of correction on hourly employees, Defendants were aware of, permitted, and/or demanded that employees continue to work during unpaid meal periods, and Defendants routinely ignored or discouraged the use of time adjustment forms to reverse the automatic deduction.

Plaintiffs presented evidence that Defendants employed a meal break deduction policy applicable to all non-exempt employees.

---

[11] Similarly, in a number of other auto-deduction cases, courts have granted certification based on the plaintiffs' evidence of the existence of an automatic deduction policy, especially in cases where the defendants failed to ensure that employees do not actually work during their unpaid meal breaks. Kuznyetsov v. W. Penn Allegheny Health Sys., Inc., No. 09-CV-379, 2009 WL 1515175 (W.D. Pa. June 1, 2009); Taylor v. Pittsburgh Mercy Health Sys., No. 09-377, 2009 WL 2003354 (W.D. Pa. July 7, 2009); Frye, 2008 WL 6653632; Hinterberger v. Catholic Health Sys., No. 08-CV-380S, 2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009); Colozzi v. St. Joseph's Hosp. Health Ctr., 595 F. Supp. 2d 200 (N.D.N.Y. 2009); Fengler v. Crouse Health Found., Inc., 595 F. Supp. 2d 189 (N.D.N.Y. 2009); Ohsann v. L.V. Stabler Hosp., No. 2:07-cv-0875-WKW, 2008 WL 2468559 (M.D. Ala. June 17, 2008).

(Miller Decl. ¶ 13; Turner Decl. ¶¶ 11-12.) Under the policy, thirty minutes were deducted from all hourly employees' time for meals, regardless of whether they actually took such meals. (Interrogs. ¶ 9.) The policy placed the burden on employees to reverse the automatic deduction, requiring employees to fill out a Time Adjustment Form, obtain their supervisor's signature, and submit the form for approval when they missed a meal break. (Miller Decl. ¶ 13; Interrogs. ¶ 10.)  This policy was the same at both Lakeside and CBH. (Curran Interrogs. ¶ 9; Moody Decl. ¶ 3.)

Plaintiffs also presented evidence that Defendants failed to ensure that employees took breaks and often required employees to work through all or part of their meal period, because they could not leave patients unsupervised, there was not enough staff to relieve them, or the demands placed on them prevented them from taking a break. (See Interrogs. ¶¶ 3, 9. 17.) According to all the declarants, management was aware that employees were working unpaid through meal breaks. (See id. ¶¶ 7, 14, 17.) Moreover, Plaintiffs presented substantial evidence that Defendants' time adjustment policy was not enforced; instead, the evidence suggests that Defendants routinely discouraged employees from utilizing the time adjustment forms. (See id. ¶¶ 7, 10.)

Taken together, the Court finds that Plaintiffs have made a modest factual showing that they and the putative class members were victims of a common practice that may have resulted in improper compensation.  As suggested in Camesi, Plaintiffs' evidence is sufficient to create a reasonable inference that, for all hourly employees of Lakeside and/or UHS subjected to the automatic meal break deduction, Defendants abandoned their duty

"to ensure that non-qualifying meal breaks [were] not deducted from [employees'] pay." 2009 WL 1361265, at *4. At this stage in the litigation, evidence of this common practice is enough to warrant conditional certification and notice to all non-exempt employees of Lakeside, UHS, or both.

## B. Defendants' Objections to Conditional Certification and Court-Facilitated Notice

In opposition to Plaintiffs' motion, Defendants offer a number of additional arguments that conditional certification is not merited in this case. For the reasons discussed below, the Court rejects Defendants' arguments.

### 1. Integrated Enterprise Question

Defendants argue that collective certification is improper because Lakeside and CBH are unaffiliated employers with distinct compensation structures and policies such that employees of one company are not similarly situated to employees of the other.[12] (Defs.' Resp. 8.) At the conditional certification stage, the Court disagrees.

"The FLSA contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA." Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 965 (6th Cir. 1991) (citations omitted). "The remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term

---

[12] On August 8, 2010, the Court entered an order granting Plaintiff Cherie Lindberg's Motion to Amend, which sought to add UHS and CBH as additional Defendants and Grady Moody as an additional named Plaintiff. In its order, the Court found that Plaintiff's complaint stated facts sufficient to support a plausible claim that UHS is an "employer" for purposes of liability under the FLSA under the "integrated enterprise" test. (D.E. 48 ("Order Granting Leave to Amend") 5-7.) Defendants now ask the Court to revisit the "integrated enterprise" issue, arguing that it is relevant to whether Plaintiffs and the putative opt-in plaintiffs are similarly situated for purposes of conditional class certification. (Defs.' Resp. 8 n.3.) As discussed further below, the Court declines to make this legal determination at this stage in the litigation.

would be interpreted in traditional common law applications." _Id._ at 965 (quoting _McLaughlin v. Seafood, Inc._, 867 F.2d 875, 877 (5th Cir. 1989)). At the notice stage of certification, where the Court applies a "fairly lenient" standard to determine whether the named plaintiffs have demonstrated they are similarly situated to the putative plaintiffs, several courts have found it proper to conditionally certify an FLSA class that consists of employees of related employers.[13] This procedure permits a court to issue notice to potential class members and delay the determination of whether the defendants may be treated as single employer for the decertification stage. As noted by the district court in _Ohsann_, the Court "is only determining the issue of conditional class certification and the proper scope of the proposed class and notice" and any question of a particular defendant's liability can be taken up at a later time. 2008 WL 2468559, at *1 n.2.

Given the lenient standard applicable at this stage in the litigation, the Court finds that Plaintiffs have made an adequate factual showing that Lakeside employees and CBH employees are similarly situated. Both Lakeside and CBH operate behavioral health facilities. (Miller Decl. ¶ 2-3; Turner Decl. ¶ 1.) Lakeside is a wholly-owned subsidiary of UHS. (Klein Decl. ¶ 4

---

[13] _See Alba v. Loncar_, No. 3:03-CV-1295-M-(BH), 2004 WL 1144052, at *5 (N.D. Tex. May 20, 2004) (certifying a class consisting of persons "employed by one of Defendants at any time since June 23, 2000"); _Aquilar v. Complete Landsculpture, Inc._, No. Civ.A.3:04 CV 0776 D, 2004 WL 2293842 (N.D. Tex. Oct. 7, 2004) (noting that "if discovery shows that certain plaintiffs are not similarly situated due to differences in employers, the court can decertify the class or can create subclasses"); _In re Enterprise Rent-A-Car_, No. 2:09-mc-00210-JFC, 2010 WL 3447783, at *24 n.14 (W.D. Pa. Aug. 13, 2010) (finding that, "[e]ven though a parent is not a joint employer under the FLSA, collective action certification may still be appropriate" and granting certification for employees of eight subsidiaries); _Manning v. Goldbert Falcon, LLC_, No. 08-3427 (JEI), 2010 WL 3906735, at *4 (D.N.J. Sept. 29, 2010) (conditionally certifying a plaintiff class of employees of "three separate but related employers" based on evidence of a common pay policy).

(stating that Lakeside is a limited liability company whose sole managing member is UHS).) CBH is a partially-owned subsidiary of Lakeside. (Id. ¶ 5 (averring that CBH is jointly owned by Lakeside and Southeast Mental Health Center).) The written meal break deduction policies employed by Lakeside and CBH during the relevant time period were identical. (Miller Decl. ¶ 13; Turner Decl. ¶ 11-12.) Plaintiffs presented evidence that Defendants' implementation of the policy was the same at both Lakeside and CBH. (Curran Interrogs. ¶ 9; Moody Decl. ¶ 3.) All of the declarants averred that, in some manner, they were expressly or impliedly discouraged from utilizing a time adjustment form to reverse an automatic meal break deduction. (Interrogatories ¶ 10.)

This case is therefore distinguishable from Brooks v. A Rainaldi Plumbing, Inc., No. 6:06-cv-631-Orl-31DAB, 2006 WL 3544737 (M.D. Fla. December 8, 2006), in which the Court declined to certify a class comprised of employees from two separate employers. In Brooks, Plaintiffs provided "no explanation" as to why the two companies should be considered one enterprise or joint employers and presented no evidence that the employers had similar job descriptions or pay structures. Id. at *2. In contrast, Plaintiffs point to evidence that Lakeside and CBH are both subsidiaries of UHS, that Lakeside and CBH had identical meal break deduction policies, and that the policies were applied to all non-exempt employees in the same manner.

Taken together, the Court finds that employees of Lakeside and CBH may be members of the same conditionally certified class.[14]

---

[14] This determination has no bearing on whether Lakeside, CBH, and UHS may be considered one integrated enterprise for purposes of FLSA liability. The standards are different. To test whether Plaintiffs have made an adequate

The Court reserves the determination of whether Lakeside and CBH may be considered one integrated enterprise for the decertification stage.[15]

## 2. Individual Inquiries

Defendants argue that conditional certification is inappropriate because individual issues may dominate due to the nature of Plaintiffs' claim. (Defs.' Resp. 11-13.) This argument is unavailing. "When a plaintiff has made the minimal showing required at the notice stage, the defendant cannot overcome [the] [p]laintiff's showing by arguing that individual issues may dominate; rather, that issue must be raised in a motion to decertify at the second stage of the certification process." Noble v. Serco, Inc., 2009 U.S. Dist. LEXIS 89709, at *10-11 (E.D. Ky. Sept. 28, 2009); see also O'Brien, 575 F.3d at 585 ("[T]he plaintiffs were similarly situated, because their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized

showing that they are similarly situated to the putative plaintiffs, the Court applies a fairly lenient standard at this initial stage. To determine whether UHS, Lakeside, and CBH may be considered one integrated enterprise, the Court looks at the four-factor integrated enterprise test. See Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 994 (6th Cir. 1997). Though Defendants have produced evidence suggesting that UHS, Lakeside, and CBH do not satisfy the integrated enterprise test, the Court declines to deny conditional certification based on this evidence. See Ohsann, 2008 WL 2468559, at *1 n.2. Given the lenient standard applicable to Plaintiffs' motion, Defendants arguments are better suited to a motion for summary judgment or a motion for decertification.

[15] At that stage, if discovery shows that Lakeside employees and CBH employees are not similarly situated, the Court has a number of options available. It can decertify the class, dismiss the opt-in plaintiffs, and sever the lead Plaintiffs into individual actions. Rodolico v. Unisys Corp., 199 F.R.D. 468, 484 (E.D.N.Y. 2001); see also Fox v. Tyson Foods, Inc., 519 F.3d 1298, 1301 (11th Cir. 2008) (affirming decertification of an FLSA collective action, dismissal of the opt-in plaintiffs, and severance of named plaintiffs into multiple individual actions). Alternatively, the Court can create subclasses by, for example, separating Lakeside and CBH employees. See Wilks v. Pep Boys, No. 3:02-0837, 2006 WL 2821700, at *7 (M.D. Tenn. Sept. 26, 2006); see also Takacs v. Hahn Auto. Corp., No. C-3-95-404, 1999 WL 33127976, at *1-*3 (S.D. Ohio Jan. 25, 1999).

and distinct."). Defendants' arguments are more appropriately raised at the decertification stage.

### 3. Disparate Job Duties

Defendants also argue that this case is inappropriate for collective action treatment because the plaintiffs have highly disparate job functions and duties that will require the Court to engage in an individualized inquiry. (Defs.' Resp. 13-16.) The Court disagrees. This case is at the initial notice stage where Plaintiffs need only show that their positions are "similar, not identical, to the positions held by the putative class members." Comer, 454 F.3d at 546-47 (citations omitted). Moreover, disparate job titles and duties are largely irrelevant at this stage; the relevant consideration is that these employees were subject to Defendants' common practice of "requiring unpaid work during meal periods, which may have resulted in FLSA overtime violations." Hinterberger, 2009 WL 3464134, at *9 (citation omitted). Accordingly, the Court rejects this argument.

### 4. Scope of Plaintiffs' Purported Class

Defendants argue that, even if Plaintiffs meet their burden for conditional certification, the proposed class is overbroad. (Defs.' Resp. 17.) Defendants contend that the Court should limit the scope of the class to employees in direct-care positions.

In support, Defendants cite Hinterberger and Colozzi, where New York district courts limited the class of plaintiffs in auto-deduction cases to direct care employees. Hinterberger, 2009 WL 3464134, at *5; Colozzi, 595 F. Supp. 2d at 208. In Hinterberger, the court reasoned that the class should be limited to direct-care positions in light of common allegations that employees were

expected to work during meal breaks to engage in patient care.
2009 WL 3464134, at *5-6. The court reasoned that these same
concerns could not be said to extend to "hourly workers engaged in
clerical, food service, maintenance, and other positions that do
not involve that same level of immediate and direct patient care."
Id.; accord Colozzi, 595 F. Supp. 2d at 208 (concerns of "short
staffing and patient care demands" were issues that "obviously do
not extend to non-patient care workers"); Fengler, 595 F. Supp. 2d
189, 192 (N.D.N.Y. 2009) (same); Hamelin v. Faxton-St. Luke's
Healthcare, No. 6:08-CV-1219 (CNH/DEP), 2009 WL 211512, at *3
(N.D.N.Y. Jan. 26, 2009) (same).

Other district courts, however, have refused to limit the
class of putative plaintiffs to direct-care positions. For
example, in Camesi, the court rejected the defendants' argument
that notice should be limited to nurses because the named
plaintiffs demonstrated that the objectionable auto-deduction
policy applied to "all non-exempt employees, regardless of job
title or work location." 2009 WL 1361265, at *5. The court
concluded that, because the defendants' policy was susceptible to
challenge at the notice stage, the entire class of hourly
employees to which the policy applied were entitled to notice.
Id.

Similarly, in Kuznyetsov, the court rejected the defendants'
argument that notice should be limited to employees with patient
care responsibilities because the plaintiffs' affidavits did not
restrict the reasons for working through meal breaks to patient
care. 200 WL 1515175, at *3. Rather, the affiants also asserted
that they worked through meals due to staffing issues. Id.;

accord Taylor, 2009 WL 2003354, at *1 (refusing to limit the class to direct-care employees where the affiants identified both patient care needs and staffing shortfalls as reasons for working through meal breaks).

In this case, Plaintiffs have demonstrated both that the meal break deduction policy applied to all non-exempt employees and that the reasons employees worked through meal periods extended beyond patient care requirements. Though all but one declarant averred that their respective duties involved patient care or supervision,[16] the reasons given for working through meal periods varied: insufficient staffing, instructions by management not to leave a post unattended, instructions not to leave patients unsupervised, and extensive job duties. (See supra, part II.) This evidence suggests that Defendants' expectations for working through breaks may apply equally to hourly employees in non-patient care positions. Importantly, the Court has already determined that Defendants' auto-deduction policy, applicable to all hourly employees regardless of job title, is susceptible to challenge.

Accordingly, the Court rejects Defendants' argument that the scope of Plaintiffs' class should be limited to employees working in direct care positions. At this stage, notice is appropriate to all hourly employees subject to Defendants' meal break deduction policy. Defendants challenge regarding the putative collective action members is more appropriate in the second stage of class certification, after discovery is complete.

---

[16] Lacell Cotton's description of his duties as a teacher's assistant is the lone exception. Cotton explains that, as a teacher's assistant, he administered testing and conducted group activities. (Cotton Interrogs. ¶ 3.)

### C. 216(b) Notice

#### 1. Information Regarding Potential Plaintiffs

Pursuant to Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165 (1989), the Court exercises its discretion to approve that potential members of the above-described class be notified and given an opportunity to opt-in to the action.  To facilitate this notice, the Court orders Defendants to produce to Plaintiffs a computer readable data file containing the contact information for all potential opt-in plaintiffs.  This contact information shall include the name, last known address, last known telephone number, employee number, last four digits of the Social Security number, work location(s), and dates of employment for each individual who was or is employed by Lakeside or UHS during the three years prior to January 7, 2010. Defendants have thirty (30) days in which to produce this information.

To facilitate notice, Plaintiffs also request that Defendants be required to (i) post notice of this lawsuit at each workplace; and (ii) include notice in the next paycheck of all employees. (Pls.' Mem. 19.)  Though Defendants do not object, the Court finds that such alternative methods of notice are premature.  In FLSA cases, first-class mail is generally considered to be the "best notice practicable" to ensure that proper notice is received by potential class members.  See, e.g., Hinterberger, 2009 WL 3464134, at *13 (citing cases).  If Defendants fail to produce the contact information, or production is incomplete or inaccurate, the Court may determine that alternative methods of notice are warranted.

#### 2. Form of Notice

Plaintiffs filed a proposed notice with their motion for conditional certification. (D.E. 31-4.) Defendants objected to various portions of the notice. (Defs.' Resp. 18-20.) At the telephonic hearing on Plaintiffs' motion, the Court instructed the parties to confer and submit changes to Plaintiffs' proposed notice. (D.E. 65.) The parties filed a Joint Proposed Notice on December 9, 2010. (D.E. 69.)

In light of this decision, additional modifications to the Joint Proposed Notice are warranted. The Court declines to take on the task of analyzing the joint proposed notice and attempting to conform its language to the strictures of this Order. The Court cautions, however, that the proposed notice should include language specifically referencing Lakeside's and UHS's meal break deduction policy. See Camesi, 2009 WL 1361265, at *6 (noting that the plaintiffs' proposed notice was objectionable because it alleged general failures of the defendants to pay overtime without any reference to the defendants' meal break policies).

Accordingly, the Court directs the parties to confer and develop a mutually acceptable notice letter. Should the parties be unable to reach agreement, they shall submit their respective proposals to the Court along with supporting memoranda not to exceed five (5) pages in length. The parties' stipulated notice form or respective proposals shall be filed within ten (10) days of entry of this Order.

**V. CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for conditional class certification is GRANTED.

**VI. ORDERS**

IT IS HEREBY ORDERED, that Plaintiffs' Motion for Conditional Class Certification and Court-Authorized Notice Pursuant to the FLSA, 29 U.S.C. § 216(b) (D.E. 31) is GRANTED with respect to the following class:

> All present and former hourly employees of Universal Health Services, Inc., UHS of Lakeside LLC, and/or Community Behavioral Health, LLC, who worked at UHS of Lakeside or Community Behavioral Health in Memphis, Tennessee from January 7, 2007 to present.

IT IS FURTHER ORDERED that this case may proceed as a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.;

IT IS FURTHER ORDERED that within thirty (30) days of the date of entry of this Order, Defendants shall provide to Plaintiffs the contact information for all potential members of the conditionally certified class, as directed above;

IT IS FURTHER ORDERED that within ten (10) days of the date of entry of this Order, the parties shall file a stipulated notice form or respective proposals, as directed above; and

IT IS FURTHER ORDERED that, once the notice is approved in form, and within sixty (60) days of such approval, it shall be sent by first-class mail to all potential plaintiffs.

SO ORDERED this 21st day of January, 2011.

/s/ JON PHIPPS McCALLA
CHIEF UNITED STATES DISTRICT JUDGE